1

2   TIMOTHY DILLON (CBN #190839)

3   DILLON & GERARDI APC
    4660 La Jolla Vlg. Dr. #1040

4   San Diego, CA 92122
    (858) 587-1800

5   TDillon@dillongerardi.com

6

7   SPENCER D. FREEMAN (*pro hac vice*)
    FREEMAN LAW FIRM, INC.

8   2104 N. 30th St.
    Tacoma, WA 98403

9   (253) 383-4500

10  sfreeman@freemanlawfirm.org

11

12              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA

13

14

15  FRASERSIDE HOLDINGS, LTD., a
    foreign limited liability company          **Case No.:  CV 10-5174 GW (FMOx)**

16

17            Plaintiff,                        **PLAINTIFF'S MEMORANDUM
                                                OF POINTS AND AUTHORITIES
18        vs.                                   IN OPPOSITION TO
                                                DEFENDANT'S MOTION (1) FOR
19  XOD LLC, a Delaware corporation, d/b/a      SUMMARY JUDGMENT ON
    XonDemand, xondemand.com                    COUNTS I-V AND (2) TO DISMISS
20                                              FOR LACK OF SUBJECT
                                                MATTER JURISDICTION**
21            Defendant.

22

23                                              Date:  Tuesday, November 22, 2010

24                                              Time: 8:30 AM

25                                              Courtroom:  10

26

# TABLE OF CONTENTS

**Page(s)**

I.   MOTION FOR SUMMARY JUDGEMENT                                1

    A.   STANDARDS FOR SUMMARY JUDGEMENT                    1

    B.   FACTUAL BACKGROUND                                 3

    C.   SUMMARY JUDGEMENT SHOULD BE DENIED                 5

        1. COPYRIGHT INFRINGMENT AND CONTRIBUTORY           5
           COPYRIGHT INFRINGMENT

        2. TRADEMARK CLAIMS                                 8

        3. CONTRACT INTERPRETATION AND DAMAGES              11

II.  MOTION TO DISMISS                                           14

III. COSTS AND ATTORNEY'S FEES                                   15

    A.   COPYRIGHT CLAIM                                    15

    B.   TRADEMARK CLAIM                                    17

IV.  CONCLUSION                                                  18

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION
TO DISMISS

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|
| *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) | 1 |
| *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986) | 1 |
| *Boney, Inc. v. Boney Services, Inc.,* 127 F.3d 821, 826 (9th Cir. 1997) | 17 |
| *Celotex Cop. V. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) | 2 |
| *Ellison v. Robertson*, 357 F.3d 1072, 1076-1077 (2004) | 5 |
| *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 560 (9th Cir. 1996) | 15 |
| *Funky Films, Inc. v. Time Warner Entertainment Company, L.P.,* 462 F.3d 1072, 1076 (9th Cir. 2006) | 5 |
| *Gracie v. Gracie,* 217 F.3d 1060, 1071 (2000) | 17 |
| *Jada Toys, Inc. v. Mattel, Inc.,* 518 F.3d 628 (9th Cir. 2008) | 9 |
| *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151 (3rd Cir. 1986) | 16 |
| *Nationwide Life. Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2nd Cir. 1999) | 2 |
| *Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000) | 2,10 |
| *On Davis v. The GAP, Inc.*, 246 F.3d 152, 158-59 (2nd Cir 2001) | 6 |
| *Palmer v. Truck Ins. Exch.,* 21 Cal4th 1109, 1115 (1999) | 12 |
| *Peer International Corporation v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-336 (1990) | 6,15 |
| *Sass v. Hank,* 108 Cal.App.2d 207, 215 (1951) | 11 |
| *Segal v. Geisha NYC, LLC,* 517 F.3d 501 (7th Cir. 2008) | 9 |
| *Thor Seafood Corp. v. Supply Management Services,* 352 F.Supp.2d 1128, 1131 (C.D. CA 2005) | 11 |
| *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 257 (9th Cir. 1995) | 10 |

| **Statutes** | **Page(s)** |
|---|---|
| Fed.R.Civ.P. 56(c) | 2 |
| 17 U.S.C § 501 | 5 |
| 15 U.S.C. 1117 (a) (3) | 17 |
| 28 U.S.C s1367(a) | 15 |
| 15 U.S.C § 1114 | 8 |
| 15 U.S.C § 1125 (a) | 8,10 |
| 15 U.S.C.A § 1114 | 8 |
| 15 U.S.C.A § 1125 | 9 |

| **Other Authorities** | **Page(s)** |
|---|---|
| 4 J.McCarthy, *Mcarthy on trademarks and Unfair Competition* § 25:30 (4th Ed.2010) | 10 |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

*This case is **NOT** a contract dispute.  This case is **NOT** an accounting issue.* Defendant XOD, LLC's ("Defendant XOD") copyright  and trademark licenses were ***affirmatively terminated*** by Plaintiff Fraserside Holdings, Ltd. ("Plaintiff Fraserside") in April 2007.  Nonetheless, Defendant XOD utilized, displayed, and distributed Plaintiff Fraserside's copyrighted works after the termination, without any authority to do so.

Defendant XOD's Motions, for summary judgment and dismissal, are predicated upon (1) the false and perjurous assertion that Plaintiff Fraserside's termination notice was "never received"; and (2) interpretation that the Video Streaming Agreement precludes a copyright or trademark infringement lawsuit regardless of license termination.  Fraserside can affirmatively prove Defendant's receipt and actual knowledge of the license determination.  The assertion that the Video Streaming Agreement precludes an infringement suit is abjectly contrary to the plain language of the Agreement and the law.

Plaintiff Fraserside's claims outlined in the Complaint stand.[1]

## I.     MOTION FOR SUMMARY JUDGMENT

### A.     Standards for Summary Judgment

Summary Judgment is appropriate "if . . . there is no genuine issue as to any material fact, and . . .the moving party is entitled to judgment as a matter lf law."

---

[1] Defendant XOD shamelessly labels Plaintiff Fraserside's claims as "copyright trolling," as defined in an apparent Google article.  In support of this label, Defendant XOD directs the Court's attention to litigation filed by Plaintiff in the Northern District of California and an interview by Fraserside CEO.  Defendant XOD's interpretation of the Northern District of California as "materially identical" is incorrect.  Although Plaintiff filed infringement claims against another Defendant in the Northern District of California, those claims are factually and legally materially different from the instant case.  Statement of Genuine Issue of Material Fact ("SGI") No. 15.  Additionally, Defendant XOD's assertion that Fraserside CEO invited web site owners to violate Fraserside's copyright is simply false.  SGI No. 16.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

Fed.R.Civ.P. 56(c). Summary judgment will not be granted if there exists *any* genuine dispute about a fact from which a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

Summary judgment is a drastic remedy, cutting off a party's right to present its case to a trier of fact. Therefore, the moving party bears a ***heavy burden*** of demonstrating the absence of any triable issue of material fact. *Nationwide Life. Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2nd Cir. 1999). A party moving for summary judgment without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion in a motion for summary judgment. *Celotex Cop. V. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548 (1986); *Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000).

The moving party must meet its burden on summary judgment by negating or disproving an essential element of the opposing party's claims, or showing that opposing party does not have enough evidence of an essential element to meet the ultimate burden of persuasion at trial. *Id.* All evidence presented at summary judgment shall be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Thus, Defendant XOD must either negate an essential element of Plaintiff Fraserside's claims or establish that Plaintiff Fraserside does not have enough evidence of an essential element of its claims to carry the ultimate burden at trial. All evidence shall be viewed in the light most favorable to Plaintiff Fraserside.

Defendant XOD fails to even outline the essential elements of Fraserside's claims or argue that Fraserside cannot present evidence to satisfy essential elements.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

Defendant XOD, in fact, presents no evidence or arguments regarding the essential elements of Fraserside's claims.

Defendant XOD is incorrect in its assertion that "there is nothing in dispute here with respect to Counts I-V of the complaint." To the contrary, there is a fact material to Plaintiff Fraserside's claims and Defendant XOD's defense that is *highly* disputed – whether the contract between the parties even existed during the time periods complained of by Plaintiff Fraserside or the contract was terminated in April 2007. Termination of the Video Streaming Agreement thereby negated Defendant XOD's authority to display and distribute Plaintiff Fraserside's protected works.

### B.    Factual Background

On March 2, 2006, the parties entered into a Video Streaming Agreement, wherein Plaintiff Fraserside granted Defendant XOD with a non-transferable worldwide license to use, display, publicly perform, transmit, distribute, and reproduce Private branded Content. Statement of Genuine Issue of Material Fact ("SGI") No. 1. The licenses were granted in consideration for Defendant XOD's payment to Plaintiff Fraserside fifty percent (50%) of revenues generated from the permitted use of the Content. Ownership of all rights in and to the Content remained belonging to Plaintiff Fraserside. SGI No. 4.

The Content and licenses were not granted in perpetuity. Beginning one (1) year after the Effective Date of the Agreement, Fraserside could terminate the Agreement with thirty (30) days written notice to the Defendant XOD. The license granted by Fraserside **would not survive** termination of the Agreement. Upon termination, Defendant XOD was required to remove all of Plaintiff Fraserside's content from Defendant's services and return or destroy all content and copies of Plaintiff's content. SGI No. 5. Defendant XOD specifically listed 400 Lincoln Avenue, Unit 3A, Hatboro, PA 19040 as its principal offices. SGI No. 6.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

The Video Streaming Agreement was not a document drafted by Fraserside and presented as a "take it or leave it" proposition. Rather, the Video Streaming Agreement was one presented by Defendant XOD. In fact, it is nearly identical to many other licensing agreements Defendant XOD has negotiated with other parties. SGI No. 2, 3.

On March 5, 2007, Plaintiff Fraserside sent Defendant XOD written notice of Fraserside's termination of the Video Streaming Agreement, effective April 7, 2007. This termination notice was sent to 400 Lincoln Avenue, Unit 3A, Hatboro, PA 19040 and delivered at this address on March 8, 2007. SGI No. 8-10.

Defendant XOD Manager Frank Ryan confirmed specific knowledge of the termination of the Video Streaming Agreement when he so informed Mr. Robert Hoover, a then XOD employee, and others of Fraserside's termination of XOD's license to display and distribute the copyrighted works. SGI No. 11. Thirty (30) days after the termination notice, Defendant XOD's rights in displaying or distributing the Content ceased.

Regardless of the delivery of the written termination notice and Mr. Ryan's specific knowledge of the termination, Defendant XOD continued to display and distribute Plaintiff's protected works. SGI No. 12-14. Upon information and belief, Defendant XOD's business model is to enter licensing agreements which consideration largely payment of royalties, and then utilizing the copyrighted ands trademarked works after the licensing rights are terminated. SGI No. 15.

The Video Streaming Agreement includes a paragraph titled "Disclaimer of Warranties; Limitation of Liability." However, Defendant XOD's interpretation of this provision is incorrect, ignoring plain clear language of the provision and the Agreement as a whole. The provision states as follows:

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

IN NO EVENT WILL EITHER PARTY BE LIABILE FOR (I) ANY CONSEQUENTIAL DAMAGES, INDIRECT, EXEMPLARY, OR INCIDENTAL DAMAGES, INCLUDING LOST DATE AND LOST PROFITS, **ARISING FROM OR RELATING TO THIS AGREEMENT;** OR, (II) FOR DAMAGES EXCCEEDING THE TOTAL AMOUNT OF ALL FEES **PAYABLE TO THE OTHER PARTY HEREUNDER.** EACH PARTY ACKNOWLEDGES THAT THE FOREGOING LIMITATION REFLECTS THE ALLOCATION OF RISK SET FORTH IN THIS AGREEMENT WITHOUT THESE LIMITATIONS ON ITS LIABILITY.

Video Streaming Agreement, Paragraph 19.3.

It is without question that the limitation for liability was intended for and only applies to Defendant XOD's use of Fraserside's films pursuant to **valid** licenses. To interpret the language otherwise would *wholly* negate the termination provisions, including the termination of the licenses upon a termination notice. In short, to interpret the provision as suggested by Defendant XOD would permit XOD to continue to use the Content after termination and owe merely the royalty fees, a defacto unilateral continuance of the Video Streaming Agreement.

### C.     Summary Judgment Should be Denied

In order to be granted summary judgment, Defendant XOD must demonstrate that Plaintiff Fraserside is unable to establish every element of the asserted and challenged claims. Plaintiff Fraserside has asserted the following claims to which Defendant XOD seeks summary judgment: Copyright Infringement, Contributory Copyright Infringement, Trademark Infringement, and False Designation of Origin.

### 1.     Copyright Infringment and Contributory Copyright Infringment

Plaintiff Fraserside's Copyright Infringement Claims, pursuant to 17 U.S.C. § 501, require proof of the following essential elements: (1) ownership of a valid copyright, and (2) that defendant violated copyright owner's exclusive rights under

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

the Copyright Act. *Funky Films, Inc. v. Time Warner Entertainment Company, L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006); and *Ellison v. Robertson*, 357 F.3d 1072, 1076-1077 (2004). The contributory copyright infringement claim includes an additional essential element: the defendant, with knowledge, induced, caused, or materially contributed to the infringing conduct of another. *Ellison* at 1077.

Damages *are not* an essential element of proving a copyright infringement claim. *On Davis v. The GAP, Inc.*, 246 F.3d 152, 158-59 (2nd Cir 2001).

Additionally, it is willful copyright infringement for a defendant to continue to display, publish, distribute, or utilize copyrighted works after receipt of license termination. *Peer International Corporation v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-336 (1990).

By definition, Defendant XOD's "Motion for Summary Judgment" regarding Plaintiff Fraserside's copyright infringement claims must attack the essential elements of the copyright claims. Curiously, however, Defendant XOD's memorandum focuses on contract interpretation regarding solely damages available to Plaintiff Fraserside. Defendant XOD does not argue that Plaintiff Fraserside cannot fulfill any of the essential elements of the asserted claims, or even mention the essential elements. The amount of damages available or the type of damages available to Fraserside ***does not*** dictate whether copyright claims may be alleged.

Since damages are not an essential element to the copyright claims, Defendant XOD's arguments do not require summary judgment of Plaintiff Fraserside's copyright claims. Additionally, as further outlined in Section I.C.3. below, Defendant XOD's interpretation that the Video Streaming Agreement limits damages in case of unlawful and infringing use of copyrighted work is, simply put, wrong. In case of use of films after termination of license, Plaintiff Fraserside is *not* limited to royalties that would be due if the works were used under an existing license as the

1  damages.  Use of copyrighted works without a license is simply copyright
2  infringement.

3      Defendant XOD claims to have never received Plaintiff Fraserside's Video
4  Agreement Termination Notice.  Thus, it is possible Defendant's Motion for
5  Summary Judgment may be interpreted as arguing that Defendant XOD continued to
6  have proper authority to display and distribute Plaintiff's copyrighted works.
7  (Defendant XOD does not explicitly make this argument.)[2]  Such argument fails.

8      Plaintiff Fraserside can, in fact, prove delivery of the Termination Notice to the
9  exact and specific address listed by Defendant XOD in the Video Streaming
10  Agreement.  Further, Mr. Hoover, an employee of Defendant XOD during the time
11  the Termination Notice was served, specifically recalls and testifies to XOD manager
12  Frank Ryan's announcement, and thus acknowledgment, of Fraserside's termination
13  of the Video Streaming Agreement.

14      Therefore, as Plaintiff Fraserside can specifically prove the delivery and receipt
15  of the Termination Notice and Defendant's actual knowledge, Defendant XOD's
16  continued display and distribution of the copyrighted works was unlawful and
17  infringed on Plaintiff Fraserside's copyrights.  At a minimum, the evidence presented
18  by Plaintiff Fraserside regarding the Termination Notice presents a genuine issue of
19  material fact regarding whether Defendant XOD had authority to display and
20  distribute Plaintiff Fraserside's copyrighted works.

21      Thus, summary judgment regarding Plaintiff Fraserside's copyright claims
22  must be denied.

23

24  _____

25  [2] Interestingly, Defendant's Conclusions of Law, included in Separate Statement of Uncontroverted Facts and
    Conclusions of Law, does not include *any* reference to Defendant's assertion that the termination notice was not
26  received.  Not only does this lack of reference draw into further question the credibility of the assertion, but creates
    further confusion as to what Defendant XOD is actually arguing.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION
TO DISMISS

### 2.   Trademark Claims

Plaintiff Fraserside has alleged that Defendant XOD has infringed Fraserside's trademark rights in violation of 15 U.S.C. § 1114, and 15 U.S.C. § 1125(a).  These statutes provide as follows:

> Any person who shall, without the consent of the registrant--
>
> (**a**) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (**b**) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C.A. § 1114 (in relevant part); and

> (a) Civil action
>
> (**1**) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (**A**) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or

---

8

approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**(2)** As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

**(3)** In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

15 U.S.C.A. § 1125

Plaintiff Fraserside has alleged several claims under the Lanham Act, including trademark infringement, false designation of origin, and unfair competition.  It is immediately obvious that essential elements for claims under either statute do not include damages.

In order to establish a claim for Trademark infringement, Fraserside must show that it owns a protectable trademark and that the use of this mark by the Defendant is likely to cause confusion among consumers.  *Jada Toys, Inc. v. Mattel, Inc.,* 518 F.3d 628 (9th Cir. 2008); *Segal v. Geisha NYC, LLC,* 517 F.3d 501 (7th Cir. 2008).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

1        To state a claim for false designation of origin, or an unfair competition claim

2 under the "false association" prong of Section 43(a) of the Lanham Act, Fraserside must

3 show that Defendant XOD used in commerce a word, name, or symbol or false

4 designation of origin that is likely to cause confusion or deception as to the affiliation,

5 connection or association of Fraserside with XOD or as to the origin, sponsorship, or

6 approval by Fraserside of XOD's good or services.  15 U.S.C. ß 1125(a).

7        To state an unfair competition claim under the "false advertising" prong of

8 Section 43(a) of the Lanham Act, it must be established that there was a false or

9 deception advertisement or representations, the false advertisements or representations

10 deceived a significant portion of the consuming public, and the conduct would injure

11 the trademark holder.  *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 257 (9th

12 Cir. 1995).

13        Use of a trademark must fall within the scope of the license.  Otherwise the use

14 infringes the licensor's trademark.  4 J. McCarthy, *McCarthy on trademarks and Unfair*

15 *Competition* § 25:30 (4th Ed. 2010).

16        With regard to each of the claims, since Defendant XOD brings forth the

17 summary judgment motion, Defendant XOD has both the initial burden of production

18 and the ultimate burden of persuasion to obtain summary judgment.  *Nissan Fire &*

19 *Marine Ins. Co., Ltd. V. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

20        Thus, similar to the copyright claims, outlined above in Section I.C.1.,

21 Defendant XOD's interpretation of the Video Licensing Agreement's Limitation of

22 Liability Clause does **not** result in summary judgment on Plaintiff Fraserside's

23 trademark claims.  Damages is not an essential element of any of the claims.  Thus,

24 the amount of damages and category of damages available are not relevant for

25 summary judgment.  Moreover, Defendant XOD's interpretation of the claims is

26

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION
TO DISMISS

contrary to the plain language of the provision and renders the Termination Clause meaningless. See Section I.C.3.

Also as outlined in Section I.C.1. above, Defendant XOD's assertions that XOD did not receive the Termination Notice could be interpreted as on-going existence of license to display Plaintiff Fraserside's trademarks, thus negating essential elements of Plaintiff's claims. However, as previously argued, Plaintiff Fraserside has established delivery and receipt of the Termination Notice, as well as actual knowledge by XOD management of Fraserside's termination of the Video Streaming Agreement.

At a minimum, Fraserside has established a genuine material issue of fact regarding whether the Termination Notice was received and whether XOD was actually aware of the termination. Thus, summary judgment pertaining to the trademark claims must be denied.

### 3. Contract Interpretation and Damages

Under California law, when interpreting a contract, Courts are to look at the objective, outward expression of the contract. Where the contract is clear and explicit, the plain language of the contract governs. *Thor Seafood Corp. v. Supply Management Services,* 352 F.Supp.2d 1128, 1131 (C.D. CA 2005). A contract is not ambiguous unless it is susceptible to more that one *reasonable* interpretation. *Id.*

In interpreting a contract the Court must not make a new one or rewrite or alter by construction what has been agreed to by the parties, by must be controlled by the contract's language when its diction is clear, reasonable, explicit, and in harmony with the general purpose of the Agreement. *Sass v. Hank,* 108 Cal.App.2d 207, 215 (1951). When an agreement has been reduced to writing, the parties have the right to rely strictly upon the written word. *Id.* at 211.

The entire written agreement must be read as a unit, giving effect to every part. *Sass* at 215. Courts are to interpret the terms of a contract in context of the entire agreement, each clause helping to interpret the other. *Palmer v. Truck Ins. Exch.,* 21 Cal4th 1109, 1115 (1999)

Defendant XOD asks this Court to ignore key plain language in the contract *and* interpret the limitation on liability clause such that the license termination clause has no practical effect or meaning whatsoever.

The Video Streaming Agreement's limitation on liability clause, Section 19.3, limits liability for (1) certain damages and (2) for damages exceeding fees. However, these limitations are limited themselves and applied only to actions or users of Fraserside's films *pursuant to a valid license*, a clear fact ignored by Defendant XOD.

Limiting liability to certain classifications of damages is *specifically limited to damages arising from or relating to the agreement.* Video Streaming Agreement, π 19.3 Once the Agreement was terminated, license to use, display, or distribute the copyrighted works ceased, i.e. Fraserside's agreement that XOD could use the films no longer existed. Use of the films *after* the termination of the license *cannot, inherently, arise from or relate to the Agreement.* Thus, exclusion of liability for consequential, indirect, exemplary, or incidental damages does not apply to unlicensed use of Fraserside's films.

A clear example of the application of this provision is as follows: If XOD were to fail to make a payment due for licensed use of Fraserside's films, XOD would be liable for only those monies due. XOD would not be liable for damages incurred by Fraserside as a result of not receiving XOD's payment, such as failure to be able to make payments on its own business expenses.

Limitation of damages to the amount of fees charged under the Agreement **applies only** to "fees *payable to the other party hereunder."* Video Streaming Agreement, π 19.3. Again, this limitation applies only actions that are compensated for under the Agreement. The term "payable" is key  - and cannot be ignored. If there is an action that is not compensated for under the Agreement, the limitation inherently cannot apply. Once the Agreement is terminated, thus terminating the license – use, display, and distribution of Fraserside's films would no longer be pursuant to the Agreement. Thus, the limitation cannot apply.

The fact that Paragraph 19.3 survives termination of the Agreement does not mean that the limitations contained therein apply to acts by XOD for which XOD has no authority, including the use of Fraserside films after termination of the license. The survival of Paragraph 19.3 results in the continued application of the limitations *for acts prior to the termination of the Agreement.* For example, if payments accrue during the validity of the Agreement and outstanding at the time of termination, the limitations still apply to damages for the payments.

Defendant's interpretation of Paragraph 19.3 not only ignores the plain language of the provision, but it also renders a key aspect of the Agreement virtually and practically meaningless. Paragraph 13 grants Fraserside authority to terminate the license, without cause, after one (1) year elapsed from the Effective Date of the Agreement. Paragraph 13.3 enumerates the paragraphs of the Agreement which survive termination. Paragraph 1, granting the 200 titles, and Paragraph 14, the license for use of the titles, are notably absent from the list of surviving provisions.

Accordingly, Fraserside has the right and capability to end XOD 's right to use Fraserside's films. To interpret the limitation provision as XOD proposes renders Fraserside's right and capability meaningless. XOD's interpretation would result in XOD's continued use of the films with the only enforceable penalty to be fees owed

to Fraserside as if the Agreement were never terminated.  Such circumstances would mean that XOD, at its own election, could continue to use the films in the exact same scenario contemplated by the Agreement.  Fraserside's termination would be pointless.  XOD's interpretation completely circumvents copyright laws.

Additionally, even if Paragraph 19.3 were interpreted to apply to XOD's unlawful use, display, and/or distribution of Fraserside's films, the limitations only apply to *damages* available to Fraserside.  Nothing in Paragraph 19.3 states that XOD cannot be found liable for copyright infringement or trademark infringement.   In fact, there are remedies available to Fraserside for Defendant XOD's actions beyond monetary damages, including injunctive relief under the Copyright Act.  Defendant XOD makes a large jump from a perceived limitation of damages to an outright prohibition of a claim for copyright or trademark infringement.  Thus, even upon XOD's interpretation of Paragraph 19.3, summary judgment on Fraserside's coyright and trademark infringement claims in not warranted.

XOD's interpretation of the language of the clause is plainly wrong.  XOD's interpretation flies in the face of the plain language of the clause, and renders other substantive provisions of the contract absolutely meaningless.  Additionally, Defendant XOD's interpretation has nothing to do with <u>liability</u> for the infringement claims.

## II.   MOTION TO DISMISS

Defendant XOD's motion to dismiss Fraserside's claims for a constructive trust and an accounting is predicated entirely upon success of its motion for summary judgment on the Fraserside's copyright  and trademark infringement claims.

If Defendant XOD is correct, that Fraserside's copyright infringement and trademark infringement claims are prohibited by the damages limitation provision of

the Video Streaming Agreement, then Defendant' argument for dismissal of the claims for a constructive trust and an accounting is compelling.

However, Defendant XOD is not correct. Use of copyrighted works after a license is terminated is, in fact, wilfull copyright infringement. *Peer International Corp., v. Pausa Records, Inc.,* 909 F.2d 1332 (9th Cir. 1990). It is clear that Fraserside terminated Defendant XOD's license in accordance with the terms of the Video Streaming Agreement. Therefore, Defendant XOD infringed Fraserside's copyrights in displaying and distributing Fraserside's films as alleged.

Defendant XOD's motion for summary judgment on the copyright and trademark claims fails so miserably that its argument pertaining to dismissal of the state claims fails on its face.

Since Fraserside's copyright and trademark claims are righteous and survive the summary judgment motion filed by Defendant XOD, the supplemental state law claims survive as well. *See* 28 U.S.C. s1367(a).

## III. COSTS AND ATTORNEYS FEES

Upon successful dismissal of the copyright, trademark, and state law claims, Defendant XOD claims it has the right to recover attorneys' fees.

### A. Copyright Claim

First and foremost, Defendant XOD cannot prevail on its motion for summary judgment because it did not meet its burden in negating any essential element of Fraserside's copyright infringement claim.

Should the Court grant Defendant XOD's motion for summary judgment, the award of attorneys' fees is not automatic. Instead, awarding attorneys fees to a prevailing defendant in copyright infringement case is discretionary, consistent with policies of Copyright Act. *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 560 (9th Cir. 1996). In awarding attorneys fees to a prevailing party in a copyright infringement case,

court may look to nonexclusive factors set forth in *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151 (3rd Cir. 1986) as guides so long as they are applied consistently with the purposes of the Copyright Act. *Fantasy, Inc.* at 560.

The Court in *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151 (3rd Cir. 1986) determined that while a finding of bad faith is not required to award attorneys fees to a prevailing party in a copyright action, attorneys fees should not be awarded in every case. Factors which effect a decision whether to award attorney fees include frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance consideration of compensation and deterrence. *Id.* at 156.

Defendant's basis for asking the court to exercise discretion and award attorney fees is the assertion that plaintiff's claims are frivolous and objectively unreasonable.[3] An assertion that Fraserside's copyright infringement claims are frivolous or objectively unreasonable is quite interest considering not once in Defendant's motion did Defendant argue that Fraserside could not fulfill the essential elements of the claims.

Moreover, Fraserside has affirmatively established that the license granted in the Content Licensing Agreement was terminated in April, 2007. Fraserside has also established that Defendant XOD was fully aware of the termination and continued to display Fraserside's films thereafter, without proper license or authority.

It is Defendant's motion that is frivolous and objectively unreasonable – both in its interpretation of the Content Licensing Agreement *and* in its clear failure to even remotely met its burden in summary judgment. Defendant XOD's contract interpretation ignores the plain language of the contract and renders Fraserside's termination rights completely meaningless. Defendant XOD doesn't even argue that

---

[3] Defendant XOD has not presented any actual argument regarding the factors, but merely highlighted these words in quoting *Lieb.*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

Fraserside cannot establish the essential elements of the claim, only that damages would be limited to XOD's estimated $400.

Fraserside terminated Defendant XOD's license rights, and Defendant XOD continued to display and distribute the films. Fraserside's copyright claims are righteous, not frivolous or objectively unreasonable.

### B.    TradeMark Claim

As thoroughly outlined above, Defendant XOD cannot prevail on its motion for summary judgment because it did not meet its burden in negating any essential element of Fraserside's claims.

Even if Defendant XOD prevailed, the Lanham Act provides for attorneys fees to a prevailing party in a trademark action only in "exceptional cases." 15 U.S.C. 1117(a)(3).   Bad faith or malicious conduct on behalf of a plaintiff would have to exist in order for a prevailing defendant to be awarded attorneys fees. *Boney, Inc. v. Boney Services, Inc.,* 127 F.3d 821, 826 (9th Cir. 1997).  Said another way, exceptional circumstances justifying an award for attorney's fees in a trademark claim requires a finding that the non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith. *Gracie v. Gracie,* 217 F.3d 1060, 1071 (2000).

As stated in Section III.B., Fraserside's trademark claims are righteous and solid.  It is Defendant XOD's motions that are groundless, unreasonable, vexatious, and pursued in bad faith.

This case is a far cry from one that is "exceptional" such that defendant XOD could recover attorneys fees.  Defendant XOD used Fraserside's trademark after license was terminated.  Fraserside's infringement claims are clearly reasonable and justified.

# IV.   CONCLUSION

This case is ***not*** a contract case and ***not*** an accounting issue, contrary to Defendant XOD's attempts to fool this Court.

Fraserside terminated Defendant XOD's license to use, distribute, and/or display Fraserside's copyrighted films and trademark "PRIVATE." Thereafter, for over three (3) years, Defendant XOD continued to use, distribute, and display Fraserside's copyrighted films and trademark. Period. Simple as that. Fraserside's infringement claims are righteous.

Defendant XOD attempts to skirt liability by claiming it "never received the termination notice" and twisting the limitation of liability clause of the Video Streaming Agreement. First, it is proven that the termination notice was delivered at the exact address listed by Defendant XOD in the Agreement *and* that Defendant XOD had *actual* knowledge the license termination. Second, XOD manipulates the limitation of liability clause such that it ignores the plain language of the provision, renders the termination provision completely meaningless, and totally circumvents copyright laws.

Defendant XOD used, displayed, and distributed Fraserside's copyrighted films and trademark ***after*** Fraserside affirmatively terminated the license. Fraserside's infringement claims, and supplemental state law claims survive Defendant XOD's motion for summary judgment and motion to dismiss.

\\\\

\\\

\\

\

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

1

2 Dated: October 31, 2010                     Respectfully Submitted,

3

4                                              SPENCER D. FREEMAN
                                              FREEMAN LAW FIRM, INC.
5

6                                              By: ____/s/ Spencer D. Freeman____
7                                                    Spencer D. Freeman

8                                              DILLON & GERARDI

9

10                                             By: s/ Timothy Dillon
                                              Timothy Dillon (CBN #190839)
11

12                                             Counsel for Plaintiff Fraserside

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS