PHIL GREEN
GREEN & GREEN
1000 4th Street
Penthouse Suite 875
San Rafael, CA 94901
phil@greenandgreen.com

SPENCER D. FREEMAN (*pro hac*)
FREEMAN LAW FIRM, INC.
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
(253) 383-4500
sfreeman@freemanlawfirm.org

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRASERSIDE HOLDINGS, LTD., a foreign limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>XOD LLC, a Delaware corporation, d/b/a XonDemand, xondemand.com<br><br>Defendant. | **Case No.:  CV 10-5174 JAK (FMO)**<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**<br><br>Date:  January 9, 2012<br>Time:  8:30 AM |

COMES NOW Plaintiff Fraserside Holdings, Ltd, by and through its undersigned counsel, and respectfully submits this supplemental memorandum in support of Plaintiff's request that the Court enter Default Judgment against Defendant XOD LLC in the amount of $4,500,000.

On December 5, 2011, at a hearing for entry of judgment, the Court requested (1) further evidence regarding estimated range of actual damages to Plaintiff; (2) further evidence and argument regarding the reasons a range of actual damages cannot be quantified, if a range cannot be presented; (3) further evidence and argument supporting and/or justify the large award sought by Plaintiff; and (4) further evidence regarding attorneys fees.

## I. <u>ACTUAL DAMAGES</u>

In totality, there is truly no available manner in which to accurately quantify a range of full actual damages incurred by Fraserside as a result of the piracy of its copyrighted works by Defendant XOD.

Estimates of a portion of actual damages can be calculated based upon (1) Google statistics pertaining to XOD sites and/or (2) the value of the Fraserside license in similar contexts.[1]  However, such estimates inherently fail to take into account all of the damage done by Defendant XOD, including affiliates offering free

---

[1] Defendant XOD, when participating in the litigation, claims to have owed Fraserside $377.64 for Defendant's use of Fraserside's work subsequent to the termination of the license.  *See Declaration of Frank Ryan,* Dkt. No. 17.  However, other than self-serving excel spreadsheets, XOD could not produce any other documents or proof that their representations were accurate and correct.  These self serving figures, which can be manipulated by the web site operator, cannot be trusted.  Not only are they absolutely contrary to the established value of Fraserside's copyrighted works, but Defendant XOD has already lied to this Court, when stating that XOD never received the license termination letter.  Not only was Fraserside able to prove actual deliver, but one of XOD's employees, Rob Hoover, admitted that Mr. Frank Ryan told all employees about the termination letter when it was received. *See Declaration of Robert Hoover,* Dkt. No. 30.

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

portions of Fraserside's copyrighted works to the general internet surfer and Defendant XOD's pilfering of Internet users searching for Private label movies.

Income an adult erotica web site generates can be estimated based upon the number of page entries the site has on Google.  A search engine page value is $.60 per month per page.  *See Second Declaration of Jason Tucker, ("2nd Decl. J. Tucker"),* p 3, ¶ 8.

Xondemand.com has 472,000 page entries in Google.  *Id.*  Thus, per month, the web sites estimated revenue would be $200,000.  *2nd Decl. J. Tucker,* p 3,  ¶ 8.  Per year, estimated revenue of XOD is $2.4 million.  During the three years that Defendant XOD was illegally displaying Fraserside's copyrighted works, Defendant XOD can be estimated to have generated $7.2 million.

It cannot be possible to know how much of the $7.2 million in estimated revenue is attributable to Defendant XOD's illegal use of Fraserside's copyrighted works.  Thus, it may be of more assistance to look at the true and actual value of the license in like and similar circumstances.

Fraserside has entered into licensing agreements similar to the terminated XOD license with a very limited number of persons.  To be exact, Fraserside entered into only three such licensing deals.  Each of the licensing deals were with companies analogous to XOD in all meaningful ways.  The companies were of the same or similar business model, the same or similar quality, and the same or similar size and/or position in the market place as Defendant XOD.  *2nd Decl. J. Tucker,* p 2,  ¶3.

For the same three-year period that XOD was illegally displaying Fraserside's copyrighted works, these three companies generated revenue to Fraserside, specific to the licenses, in the aggregate in excess of $11.5 million.  *2nd Decl. J. Tucker,* p 2,  ¶ 3.  Thus, on average, each license generated $3.8 million during the three year period.

Accordingly, the true and actual value of the license to Fraserside during the period that Defendant XOD illegally displayed Fraserside's copy was $3.8 million.

The actual damage to Fraserside does not end with the failure to pay Fraserside the true value of the Fraserside license during the three years of Defendant's illegal display.  Defendant advertised Fraserside's "Private" labeled titles.  Anyone searching for Private titles on the Internet would have located Defendant's web site.  Thus, Internet traffic to Defendant's web site is Internet traffic that – in the case of users looking for Private movies – may likely have ended up on Fraserside sites, whether owned by Fraserside or licensed by Fraserside, if not for Defendant's use of and advertising Fraserside's copyrighted works.

In fact, even today, Defendant XOD is pilfering users looking for Private movie titles.  Defendant XOD is *still* advertising Private movie titles as being offered on Xondemand.com.  *2nd Decl. J. Tucker,* p 3,  ¶ 11, Ex C.  Thus, users that are looking for Private movie titles may likely end up on Defendant XOD's web sites.

Each and every end user that ended up on Defendant's web site while searching for Private movies was a direct loss to Fraserside.  There is, however, a significant problem with quantifying such loss.  There is no way, practical or otherwise, to determine what Internet traffic ended up on Defendant's sites as a result for searching for Fraserside's works.  Given the quality and popularity of Fraserside's works, it cannot be presumed a mere small percentage of XOD's users.

Additionally, Defendant XOD's affiliate program permitted its affiliates to use Fraserside's copyrighted works for promotional purposes, offering the Internet surfer free access to view portions of Fraserside's Private titles.  *2nd Decl. J. Tucker,* p 3,  ¶ 11, Ex B.  Clearly, the free availability of Fraserside's copyrighted works materially affects the market value of the works.  Quite simply, why would a user search for a pay site to view portions of Fraserside's works when the user could do so for free

with one of Defendant's affiliates?  There is, however, no meaningful way to quantify such damages.

It is noteworthy that Defendant XOD maintained extremely an active Internet presence.  Not only did that have 472,000 page entries on Google, and maintained high first page rankings on all major search engines, but XOD had $5.5 million invested in the business.  *See Declaration of Jeff Dillon,* p 3, ¶ 8.

The clearly established value of the Fraserside license during the time period Defendant XOD was illegally displaying Fraserside's copyrighted works is $3.8 million.  Further, Defendant XOD was conceivably earning revenues of $7.2 million or more during that same time period.  There is no way to know what exact portion of that revenue was attributable to the Fraserside copyrighted works.  The damage to Fraseride is not limited to the value of the license.  Defendant XOD was pilfering Fraserside's intended users by advertising the Private label movies during this time period, and even still today.  Defendant XOD was also permitting affiliates to display Private label movies to Internet surfers for promotional purposes.  There is no way to adequately or properly quantify the latter two components of actual damages to Fraserside.

While the value of actual damages is at least $3.8 million, the known value of the Fraserside license, the actual damages to Fraserside are significantly higher, and unquantifiable.  Accordingly, Fraserside's request of judgment of maximum statutory damages, in the amount of $4,500,000, is justified.

## II.   NECESSITY OF SIGNIFICANT AWARD.

Piracy of copyrighted and trademarked works is a multi-billion dollar, global industry of theft.  The piracy of legal adult entertainment is the training ground for all other forms of online piracy – audio books, television shows, digital music files, and

general release Hollywood movies.  USA Today wrote, "Online porn often leads high-tech way"[2] and it is a fact that pornography lead the technological advances and mass acceptance of VHS, DVD's, the growth of the Internet, streaming video, online advertising, online payment processing, and downloads.  Online piracy of pornography has lead the way for piracy of more mainstream copyrighted works; it has provided a roadmap at a significant cost to the legitimate and legal adult and mainstream entertainment industries.

The pirates of pornography train like professional sports players before a big game; they are masterful at their craft and execute with precision.  They diligently find ways to hide assets and identities while exploiting weaknesses in their prey. Piracy such as that committed by Defendant is committed only for profit; no party engages in piracy out of any feeling of philanthropic responsibility or to further constitutional free expression.  The Rand Institute's 2009 publication Film, Piracy, Organized Crime, and Terrorism determined that "Piracy is high in payoff – with profit margins greater than those of illegal narcotics – and low in risk often taking place under the radar of law enforcement.  In addition, terrorist groups have in some cases used the proceeds of film piracy to finance their activities.  Besides being a threat to the global information economy, counterfeiting threatens public safety and national security."[3]

In May 2011, Assistant Attorney General Lanny A. Breuer of the Criminal Division during a speech to the International Anti-Counterfeiting Coalition Spring Conference said, "[Intellectual Property] IP Crime is a serious threat.  It jeopardizes

---

[2] http://www.usatoday.com/money/industries/technology/2004-03-09-onlineporn_x.htm
[3] http://www.rand.org/pubs/monographs/2009/RAND_MG742.pdf

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

the health and safety of consumers.  It stifles creativity.  And it has a negative effect on the American economy."[4]

Piracy is not a victimless crime and piracy of legal adult materials leads to greater occurrences of piracy across all other forms of online intellectual property.  It is against this backdrop that the request for entry of Default Judgment is respectfully submitted to the Court.

The Free Speech Coalition agrees with the need for large statutory damages for the piracy of adult content.  The Executive Director, Diane Duke, states as follows:

> "Large statutory damages are needed because copyright infringement lawsuits are the only enforcement available to the industry.  Piracy in the adult erotica on-line industry has devastated the industry, with protected materials being widely and illegally available to the public.  An award that parallels smaller "actual damages" is ultimately meaningless to the infringer.  The online infringers make significant money using pirated works by selling advertising on web pages that illegally display such works.  Merely enforcing what a pirate would have paid if had purchased a license to legally display the works pales in comparison to the monies earned by the pirate through advertisement revenues. This no deterrence at all: simple cost benefit analysis results in pirating activities to continue, without meaningful sanctions I am afraid that this type of piracy will not only continue, but continue to thrive."

*2nd Decl. J. Tucker,* p 3,  ¶ 13, Ex D.

The monies made by pirates of protected adult erotica materials is significant and staggering, far outreaching the cost of purchasing legal licenses.  As stated in the

---

[4] Source: FBI Counterintelligence Strategic Partnership Newsletter http://www.ndiastl.org/wp-content/uploads/2011/07/Newsletter-July.pdf (Page 3)

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

initial briefing for entry of judgment, *deterrence* is a major point of statutory damages. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co*., 74 F.3d 488, 496-97 (4th Cir. 1996); *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233-344 (1952).

It is appropriate that the Court use opportunities such as this to send a message of deterrence to would be infringers that, "it costs less to obey the copyright laws than to disobey them." *International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N. Ill. 1987), affirmed 855 F. 2d 375 (N.D. Ill. 1987). "[C]ourts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws." Id. See also, *Hickory Grove Music v. Andrews*, 749 F. Supp. 1001, 1003 (D. Mont. 1990); *Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont. 1989).

The maximum statutory damages of $4.5 million sought are certainly in line with the value of the Fraserside license during the time that Defendant XOD illegally displayed Fraserside's copyrighted works, valued at $3.8 million.  This is especially the case when the value of the license is but a portion of the actual damages incurred by Fraserside.  More importantly, the deterrence effect necessary to thwart piracy mandates the statutory maximum.  Otherwise, Internet pirates will continue their activities, with the only enforcement actions available against them being seen as a mere "acceptable cost of doing business."

## III.   ATTORNEY'S FEES

The Court has indicated that attorney's fees incurred pertaining to the mediation in this case are not properly awarded.  Thus, an amended attorney's fees invoice is submitted herewith. *See Second Declaration of Spencer D. Freeman*, p 2, ¶¶ 2-3.

1   The claimed fees for Mr. Freeman are therefore amended to $36,960.

2   Regarding local counsel fees, submitted herewith are invoices for the two local

3   counsel that have worked on this case.  *2nd Decl. J. Tucker,* p 4,  ¶ 14, Ex E.  Local

4   counsel fees exceeded $10,000.

5   The costs of $550 remain without amendment.  In total, Fraserside requests a

6   total attorneys fees and costs award of $47,510.

7   **III.   CONCLUSION**

8   Fraserside has established that the value of its license for the copyrighted

9   works for the time that Defendant XOD illegally displayed the works is $3.8 million.

10  Fraserside has also established that the value of the license was a mere portion of the

11  actual damages incurred, with the remainder being unquantifiable.

12  Most importantly, the deterrence effect necessary for maximum statutory

13  damages and the deterrent effect contemplated by statutory damages mandates the

14  assessment of the maximum statutory damages

15

16   Dated: December 15, 2011                    Respectfully Submitted,

17

18                                               SPENCER D. FREEMAN

19                                               FREEMAN LAW FIRM, INC.

20

21                                               By: ___/s/ Spencer D. Freeman___

22                                                    Spencer D. Freeman

23                                               GREEN & GREEN

24                                               By: s/ Phil Green___

25                                                    Phil Green

26                                               Counsel for Plaintiff Fraserside

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT