**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-05174 JAK (FMOx) | Date | January 31, 2012 |
|---|---|---|---|
| Title | Fraserside Holdings, Ltd. v. XOD, LLC | | |

Present: The Honorable  JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Dkt. 66)

The issue presented by the present motion is the amount of damages to award as part of the default judgment in this matter. Plaintiff seeks an award of $4.5 million, in addition to an award of costs and attorney's fees, pursuant to the Copyright Act, 17 U.S.C. § 504(a). That statutory provision permits an award of either statutory or actual damages. Plaintiff contends that an award of $4.5 million would be an appropriate statutory award given the willful infringing conduct of Defendant in this matter, the difficulty of establishing actual damages with precision, and the need to deter others from similar acts of infringement. Having reviewed the materials provided by Plaintiff in a series of submissions between October 18, 2011 and January 20, 2012, the Court has determined, through the exercise of its discretion, that the appropriate statutory award with respect to the default judgment is $500,000.

Plaintiff contends that Defendant infringed its copyrighted works by "pirating" them on the Internet without paying royalties. In Plaintiff's initial filing in support of its requested damages, it stated:

> [Plaintiff] produces high quality adult entertainment films, which are distributed throughout the world on DVD, through pay-per-view and subscription television, over the Internet through paid subscription and pay-per-view, as well as through pay-per-view closed circuit systems found in many of the world's hotels. [Plaintiff] owns the copyrights and trademarks in those materials and has registered them with the United States Copyright Office. …[¶] Xondemand.com is a website that provides adult-themed audiovisual content to the public. The sole type of works available on the website appear to be copyrighted videos. These videos are copyrighted works belonging to a number of adult entertainment companies, including Plaintiff. Defendant's website offers the ability to view videos on a pay per view basis, which financially benefits Defendant.

Dkt. 67, p. 9.

Plaintiff went on to contend that Defendant is one of the most successful operators in this sphere, and that it entered a distribution agreement with Plaintiff in which Defendant agreed to pay royalties constituting 50% of its gross revenues generated from the use of approximately 250 works in which Plaintiff held copyrights. Plaintiff also stated that the gross revenues would include fees paid by

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-05174 JAK (FMOx) | Date | January 31, 2012 |
|---|---|---|---|
| Title | Fraserside Holdings, Ltd. v. XOD, LLC | | |

individual users who viewed videos available on Defendant's website. In 2007, Defendant terminated the agreement. However, according to the allegations in the complaint, Defendant continued to exploit at least 30 of Plaintiff's works on the Internet without paying any royalties to Plaintiff.

In its October submission, Plaintiff asserted that the calculation of actual damages would be difficult. But, Plaintiff contended that its damages were significant, not only due to lost revenues in the form of unpaid royalties, but because the works lost value due to the pirating and because Defendant may have obtained revenues through banner and pop up advertising associated with webpages displaying Plaintiff's copyrighted content. In support of these contentions, Plaintiff noted that:

> Defendant continued to display thirty works for more than three (3) years after notice of termination. …
>
> Defendant has established a business model of entering into license agreements, allowing them to terminate, ignoring termination and cease. [sic] and desist notices, and continue to profit from display after terminations….
>
> Defendant is on [sic] first page of search results using world's largest search engine, Google (search results dependent upon popularity of the site). …
>
> Defendant is on [sic] first page of search results using Yahoo! search engine (search results dependent upon popularity of the site). …
>
> Defendant is on [sic] first page of search results using AOL search engine (search results dependent upon popularity of the site). …

Dkt. 67, p. 21. Based on these arguments, and the contention that Defendant's infringement had been willful, Plaintiff sought statutory damages of $4.5 million.

On December 5, 2011, the Court conducted a hearing on Plaintiff's motion. At that time, the Court raised questions concerning the lack of evidence in support of the central elements of Plaintiff's claim for damages and about the evidence as to certain of the requested attorney's fees. With respect to the former, the Court noted that the contention that the proof of actual damages would be extremely difficult was not supported by sufficient evidence and that, as a result, an award of $4.5 million had not been justified. Among other things, the Court raised questions about the revenues generated from the licensing agreement with Defendant prior to its termination as a means of measuring the losses incurred during the years after its termination when Defendant continued to exploit some of the copyrighted works. In addition, the Court raised questions about the revenue generated through licensing agreements between Plaintiff and others similarly situated to Defendant. As to the request for attorney's fees, the Court raised questions as to the request for a payment of $10,000 with respect to work performed by local counsel because it was not supported by any details. Notwithstanding these issues, the Court permitted Plaintiff to file supplemental materials to address them. The Court directed that such supplemental materials were to be filed on or before December 15, 2011. It set a follow up hearing for January 9, 2012, in the event that the supplemental materials did not address the issues in a manner sufficient for the Court to enter what it considered an appropriate judgment.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-05174 JAK (FMOx) | Date | January 31, 2012 |
| Title | Fraserside Holdings, Ltd. v. XOD, LLC | | |

Plaintiff timely filed its additional materials. This second filing included both a supplemental brief and a new declaration. Upon receiving and reviewing them, the Court determined that, because they did not on their face address its questions about the appropriateness of the damages request, it would proceed with the January 9, 2012 hearing on Plaintiff's motion. At that hearing, the Court informed counsel for Plaintiff that, although the supplemental information with respect to attorney's fees was sufficient to permit the Court to determine a reasonable amount to award, the materials with respect to claimed damages were not sufficient to address the questions raised by the Court at the December hearing. Thus, the Court pointed out that the claims as to the value of the licensing agreements were not supported by any admissible evidence. For example, the Tucker Declaration, Dkt. 75, referred to licensing agreements that Plaintiff was said to have with three other entities, but did not attach those agreements. This proffer of hearsay was not sufficient to support Plaintiff's claims. Moreover, even if the agreements had been attached, no admissible evidence was submitted with respect to the revenues that Plaintiff generated through them. The Court also noted that the Dillon Declaration, Dkt. 73, proffered hearsay as to the content of an email, a copy of which was not provided. The Court tentatively decided that it could determine the proper amount of attorney's fees and costs in light of the new evidence submitted on those issues and planned to award $40,000 in attorney's fees and $550 in costs. Notwithstanding that this was the second hearing on a default matter, the Court allowed Plaintiff to seek to address the issues raised by the Court in a third filing to be made by January 23, 2012.

On January 20, 2012, Plaintiff presented its third set of pleadings to the Court in support of its motion for the entry of a default judgment. Dkt. 77-79. The Court permitted the filing of these materials under seal because they include what Plaintiff contends are its trade secrets, *i.e.*, the terms of its licensing agreements with certain non-parties.

The Court has reviewed these supplemental materials. Once again, Plaintiff has not provided sufficient evidence to support its demand of $4.5 million in damages. Although the new submissions show that Plaintiff entered licensing agreements with others and the terms of such agreements, once again no admissible evidence has been provided as to the amount of revenues generated by these agreements and how they compare to what Plaintiff received from Defendant during the period when it was a licensee. Moreover, Plaintiff still has not provided persuasive evidence as to what other, ancillary revenues Defendant may have generated as a result of its infringing activities.

Pursuant to the Copyright Act, a plaintiff may elect either statutory damages or actual damages. 17 U.S.C. § 504(a). "A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits." *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (internal quotations omitted). "If statutory damages are elected, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (internal quotations omitted). At present, the statutory minimum per work is $750 and the maximum is $30,000. 17 U.S.C. § 504(c)(1). In the case of "willful" infringement, the maximum per work infringed is increased to $150,000. *Id.* § 504(c)(2).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-05174 JAK (FMOx) | Date | January 31, 2012 |
| Title | Fraserside Holdings, Ltd. v. XOD, LLC | | |

The Court is mindful of the discretion that it has to award statutory damages. And, it is aware that such damages may be particularly appropriate where the calculation of actual damages is difficult. Nonetheless, after two hearings and three sets of submissions, the Court remains unpersuaded that the amount of statutory damages sought by Plaintiff is appropriate. Indeed, the Court remains unconvinced that Plaintiff has shown damages of even $1 million. Accordingly, even taking into account the other purposes served by the award of statutory damages, that there are certain limitations on Plaintiff's ability to show the entire amount of actual damages claimed in this matter, as well as the evidence of willful infringement by Defendant, the Court declines to award statutory damages of 4.5 times that amount. Instead, recognizing that Plaintiff states that the piracy by Defendant was of approximately 30 of the more than 200 titles originally licensed, Dkt. 67, p. 10, or about 15% of them, and in view of the substantial uncertainty as to: (i) the value to Defendant of the infringement, *i.e.*, the revenues that it generated directly and indirectly for Defendant; (ii) the amount of lost revenue and property value to Plaintiff; and (iii) the societal value of the deterrent effect of a judgment in this case, the Court determines that the appropriate amount of statutory damages in this matter is $500,000. Applying the 15% factor to the requested $4.5 million results in a figure of $675,000. The Court has further reduced that amount to reflect its uncertainty as to the monetary figures described above. Plaintiff has had multiple opportunities to provide concrete evidence as to its revenues derived from its dealings with others in connection with its claim for statutory damages; that it did not do so led the Court to have concerns about the accuracy and reliability of its claimed damages or the appropriateness of the requested award of $4.5 million. This, in turn, led to the further discounting of the $675,000 to $500,000. This award amounts to approximately $16,700 per work infringed. The Court recognizes that this award is significantly less than that sought by Plaintiff. At the same time, $500,000 is a very significant award of statutory damages. It is one that, in the Court's view, adequately and properly serves the purposes and goals of the damages provisions in the Copyright Act as presented in this action, and that is made in recognition of the difficulty in presenting comprehensive evidence of actual damages.

The Court previously made its tentative order with respect to attorney's fees ($40,000) and costs ($550). Dkt. 76. The Court now adopts those figures. Plaintiff is to submit a proposed judgment consistent with the terms of this Order no later than February 10, 2012.  The February 13, 2012 status conference is taken off calendar.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ak |